Here ye, here ye, here ye, this honorable appellate court in the 2nd Judicial District is now back in session pursuant to adjournment in an hour-long routine of planning and deciding. Please be seated. Your Honor, this case is on Document 2-16-0253. Hereby I call upon the Association of Trustees, Successors, and Interests to give a public advice on this matter. Approval of the insertion agreement is as follows. I hereby confer upon the Court of Appeals of the United States of America the authority to issue the following documents. I hereby confer upon the Court of Appeals of the United States of America the authority to issue the following documents. Good morning, Your Honors, Counsel. May it please the Court, my name is Dennis Borden and I represent the appellants, in this case, Scott and Jennifer Heikkinen. And this regards the foreclosure of their AmeriCorps residence in Naperville, Illinois. The facts that I'll be using in my argument are, as far as I know, undisputed as far as how the mortgage was generated. And so I'll just give a brief synopsis of that. I've asked the appellate court to consider five questions that we ask the appellate court, although the first two questions, I believe, are interrelated because they're basically standing issues. But what I'm going to do is focus my discussion today on the third question, and that's whether or not the, is a judgment against a borrower for non-payment of the note enforceable against the interests of a non-debtor spouse in the subject property if the property was owned by the spouse as tenants by the entirety. Let me ask you a quick question about the first couple issues. You seem to be basing it in subject matter jurisdiction, but your argument really lies in standing, correct? Yes, it's standing, and I realize that many of the courts, many of the opinions I've read, have confused standing with capacity to sue, which is granted under the IMFL. It's much easier to have capacity to be a plaintiff in a foreclosure case. But what we're talking about here is standing as determined by whether or not the plaintiff had judicial interest in the matter. But standing has nothing to do with subject matter jurisdiction, correct? Correct. The undisputed facts are that when the mortgage was generated between Scott Heikkinen and Jennifer Heikkinen and the original mortgage was argent, it's undisputed that only Scott Heikkinen executed the promissory note. At the closing, from what we gather from the record, the mortgage was executed not only by Scott Heikkinen to secure his obligations under the promissory note, but also that Jennifer Heikkinen signed the mortgage, although it's undisputed that she did not sign the promissory note. Let me ask you a procedural question. You first raised this issue regarding tenancy by the entirety in the first affirmative defenses. Correct, yes, Your Honor. They were stricken. Yes. Then you filed an amended affirmative defenses. There was an amended complaint that was filed, and we filed an amended affirmative defenses, an amended answer affirmative defenses to the amended complaint. Not raising this issue? Not in the affirmative defenses in response to the amended complaint, correct. Right. And then you didn't raise it in response to the summary judgment, or actually, I don't even know if you would have been allowed to raise it in response to the summary judgment, but you didn't file a cross-motion for summary judgment, correct? We didn't file a cross-motion, but we did raise it in our response to the motion for summary judgment, which it's my understanding under this Court's decision in first mortgage versus Dena that you can raise affirmative defenses in the context of motion for summary judgment, even if you had previously raised them as an affirmative defense in answer to the complaint. The reason I want to discuss this morning the tenancy by the entirety issue is because I see the appellate court decisions that I read to fall into two different categories. Some of the courts, especially the first district court in Marquette versus Harland, and also the third district court, which in its opinion, U.S. Bank versus SELAC, is that they fall into the category of what I consider courts that have failed to make the distinction between a mortgage, which is security for an underlying debt, and the underlying debt itself. I believe that the second district fell into a different category because, in its opinion, in city mortgage versus Parill, which was decided last year, clearly the appellate court appreciated the distinction between debt and the security for the debt, which is what the mortgage is. The reason that that distinction is critical in our argument is because of the fact that, since Jennifer Heikkinen did not sign the promissory note, and, in fact, there was no judgment based on the note rendered against her, and, in fact, there was no deficiency judgment rendered against her upon the conclusion of the foreclosure, that it's clear that any mortgage interest that she granted in the marital residence had no basis, and it's been a longstanding law in Illinois that even if you sign a mortgage as a consensual lien, without underlying debt, there simply is no mortgage. What's her interest in the property? I'm sorry? Then what is her interest in the property? Her interest in the property is what has been termed in the case in Ray Otis that I included in my brief. Her interest in the property would be a contingent future interest, as is the interest of Scott Heikkinen in the property, because under Tennessee Voting Tarity, each of the parties owns a 100% interest in the property, which mathematically sounds impossible, but that's basically the way the statute is structured, and that's based on historical cases going back hundreds of years that protected a spouse's interest, historically the wife's interest in the property, that could be protected against the debts incurred, judgment debts, of the husband, of the spouse. Obviously, in the Prill case, the parties were reversed. Was that based on the concept of dower, or was it something else? From what I've read, I believe it was based on the issue of dower. It was also to prevent a mother and her six children from being cast out in the middle of the night because of the fact that her husband incurred debts, whether those are voluntary debts or a judgment debt because of gambling debts. This case is different than that, correct? Pardon? This case is different than that, is it not? Because the wife, in this case, did sign as borrower, signed the mortgage as a borrower of the money. But the mortgage itself provides, and we cited the wording right out of the mortgages, that makes the distinction between a borrower who... Let me take a quick step back. Yes, she was a borrower under the mortgage because that's what the preprinted form called her. But then the mortgage goes on, in one of the sections of the mortgage, to say that a borrower who signs this mortgage but did not sign the note is not liable for the amounts due under the note and has only signed the mortgage to grant an interest, their interest in the property, because they happen to be a co-owner. It doesn't anticipate that those co-borrowers are going to be husband and wife and that this is a variable residence. But where that fact does apply, then we need to apply the different standard that's provided for in the tenancy by the entirety portion of the Joint Tenancy Act. So doesn't that essentially, or could that not be reasonably interpreted to mean that upon a foreclosure, the property is sold to satisfy the debt, and if there is a deficiency, it can be entered against any person who signed the note, but not any person who, quote-unquote, did not sign the note, if in fact it's a tenancy of the entireties. So that what the missus is getting is immunity from a personal judgment, joint and several, against her spouse and her. Yes, I would agree with that summation. She's agreeing that she's not liable for the personal debt, but like I said, based on cases going back to the 1920s, it's well-established that if there is no underlying debt for a mortgage, then the mortgagor is not, there is no mortgage at all in the absence of the mortgage. So she gets the house, basically. Pardon? She gets the house, pretty clear. That's what we're talking about right now. I guess if that's the logical conclusion, that's not. I don't know. I mean, what did you tell me? Well, we're not arguing that Scott Heitman is liable under the note, and therefore, if the court founds, as the trial court did, that he's liable under the promissory note, then he's still liable for the debt, and the judgment could be recorded against him, which it was in DuPage County, and his assets could be attached, except for, here again, the mayoral residence, because of the fact that that judgment, whether it's by virtue of him granting the mortgage or by virtue of a judgment recorded against him, that her interest in the property is not subject to sale because of that debt. And in Ray Yotus' case, in fact, there was a case that was referred to by Judge Smetterer that the issue is that if there is no right of sale under a mortgage or any other security agreement, then that mortgage, that lien, is simply void, because the underlying premise of any lien is that if the lien secures a judgment and there is no right of sale, then that lien is void. In Yotus, clearly only one spouse was a debtor, correct? Correct, yes. As an aside, did you actually think about putting a 10-page quote in your brief? I mean, did you actually seriously contemplate, I am going to take 10 pages of my brief and put a verbatim quote from a bankruptcy case in so the appellate court has to read 10 pages? I mean, that's telling me, I don't know what it tells the other members of the panel or the other members of the court, but that tells me that I do not trust the appellate court to read cases that I cite. My apologies to the court if that offended the court. Well, it doesn't offend me, but it offends Rule 341A, which says that lengthy quotations are disfavored. That's a rule. That's a Supreme Court rule. Whether it offends me or not is of no importance.  Yes, Your Honor. And really, when I considered how much of that opinion I could pare out and still have it be germane to the argument, I think what Judge Meador was saying, what his analysis was, is that if he had to determine at the end of the day what the Illinois Supreme Court would say, then he had to put his entire analysis into his opinion. His opinion was very lengthy. It went on much longer than I could see. What you just said there would be a paragraph that I could read with a cite to Yotus and then I'd read Yotus. And that would tell me what you're looking for me to look at in Yotus. What do you want me to glean out of Yotus as opposed to making me read Yotus in your brief and then making me read Yotus again a second time? I do agree. But in reading through Judge Meador's opinion in Yotus, is that I felt that his progression of analysis and comparison to other cases was valuable to the court because these are the same issues that several of the appellate districts in this state have had to grapple with the same issues. I felt that the length of the quote from the Yotus case was warranted because of the fact that this court could see the analysis that Judge Schneider went through to reach a conclusion that he felt the Illinois Supreme Court would also reach. Again, I don't want to belabor the point, but everything you just said to me you could put in a paragraph and then I would read the case. I do understand it. My apologies if it offended the court that I went to such length with the analysis. Could I ask, what is the significance of having the Mrs. sign the mortgage? What legal ramifications arise out of that signature? In our analysis, it has no legal significance because it can't be enforced because she is not obligated under the debt. So having her sign the mortgage has no legal value because they can't pursue her interest in the property because of the fact that she wasn't obligated under the debt. Is that because of the tenancy by entireties or does it apply across the board? It's because of tenancy by entireties. Say, for example, if instead of tenancy by the entireties, the property was in joint tenancy. So if she doesn't sign the note but she signs the mortgage, is the bottom line the same as when it's tenancy by the entireties? It may be because a joint tenancy is an undivided one-half interest that each party has in the property. Tenancy by the entirety is that each party has an independent 100% interest in the property that's independent of the interest that the other party has. That's simply the way the statute is designed. So perhaps even if only one party had signed the... So you're saying that with joint tenancy, the sale could take place for 50% of the property or because it's undivided it can't be? I haven't considered that question. I don't know that I have a... Well, I'm trying to assume that everybody does something for a reason and that people don't just do acts that amount to less than a hill of beans. And so I'm trying to understand what happened in this case legally relative to the implications of liability. And I'm trying to get some idea of what it is, what are the implications of her signature on the mortgage. You claim none because she didn't sign the note. And I think based on the Parrell case, based on my reading of the Parrell case, that was the decision in the Parrell case because Anthony Parrell did not sign the note. And this court said that there are two factors to be considered. Number one is that arguably he only signed the mortgage to release homestead rights. I grant that. But I believe the court said regardless he didn't sign the promissory note and the property is held in tenancy by the entirety. And in that case the lender asked for an equitable lien on the property because he knew that there was debt. He lived in the house. He knew based on prior loans that he was obligated under the prior loans. And this court rejected that argument. And the Illinois Supreme Court declined to hear the appeal. Do you read Parrell to say that even with the fact that the husband only signed and clearly it was to waive homestead, and it was clear in the mortgage, I'm not signing this as a borrower. I'm signing it to waive homestead, which we did note in that opinion. But you're saying that separate aside from that, our analysis really doesn't hinge on that. It hinges on other things. My argument is that that case based on the facts is much closer to this case than it is to the case that was decided in the first district, Marquette, which is very fact specific. My analysis would be I agree with you that regardless of whether he signed the mortgage knowing he was signing the mortgage or whether he only signed the mortgage to release homestead rights, that the fact hinges on the fact that he didn't sign the note. And therefore, no matter what he signed is void because there is no underlying debt as to his 100% interest in the property. Whatever he signed is simply void. Would you agree that SELAC is more factually on point even than Parrell in this case? Factually. I know you disagree with that one. Factually, yes. I would say factually, yes, because in SELAC, Gene SELAC did not sign the mortgage only to release homestead. The flaw that I find is that in reading SELAC, SELAC relied heavily on Marquette as opposed to Parrell, but I think the reason for that was that the Parrell opinion came out after the briefs had already been filed. The affluence brief and the response brief had already been filed. It came out within a matter of a few days or a couple weeks before the affluence reply brief was filed, and so I don't think that there was enough traction, so to speak, of the Parrell case to affect SELAC. Therefore, I think that the third district relied too heavily on Marquette, which was so factually specific to that situation that there was no chance for SELAC to apply because Marquette Bank applied to one land trust which signed the mortgage, one entity signed the mortgage, and in the Marquette case, Judge Reyes or Justice Reyes felt that that created a joint debt. I think right off the bat, lines into the opinion that the case was decided based on the fact that he felt that a joint mortgage created a joint debt. I obviously disagree 100% with that, but then the logical extension is that once you have joint debt, then Tempest-Seabody and Tardy goes out the window. In this case, we don't have joint debt. Thank you. You'll have an opportunity to make a comment. Okay. Thank you, Officer. Thank you. Mr. Woodworth. Good morning and may it please the Court. Charles Woodworth on behalf of the Plaintiff Appellee, U.S. Bank National Association as trustee. Why didn't the bank get the signature of Jennifer on the note? Because she was not obligated for the amount owed under the promissory note. The promissory note is a distinct instrument from the security instrument, the mortgage, which represents a lien on the property. I think if I may, I'll go through. They're focusing on what defendants characterize as the third issue. Could you repeat what you just said to me, please? Yes, absolutely. Okay. So I think it's undisputed that if there's a married couple and one spouse borrows money, there is nothing under the law that obligates both spouses to borrow money at the same time. And given that, one spouse, in this case Mr. Heikkinen, borrowed money to purchase a certain real property interest, and then he used that money to pay for the real property interest, that is a fee simple title in the property at issue here. And because he paid the prior loan. You can stop there. I understand the concept that a person not joined at the hip like a Siamese twin can sign a note independent of a spouse or mate or whatever. However, it seems that the shoe that has been thrown into the machine is that the parties were married and they held this property, which you are attempting to sell in order to liquidate your judgment against him, was held in tenancy by the integrities. So in that context, why didn't she sign the note? Because there's nothing in the law that obligates both parties to borrow money, even when it is held in tenancies by the entirety. Then how do you terminate the interest in a parcel of property of the non-signing, non-debtor tenant by the integrities? Because the spouse who is not obligated under the note is still allowed to pledge, to grant a lien on his or her interest in real property, even if that interest is by tenancy by the entireties, to secure that debt obligation. And I think if we look at the four cases that defendants rely on for the proposition that every party granting a lien on real property that they have an interest in must also be obligated under the debt that that lien secures. Would you then say that the implication of her signature on the mortgage is what you just iterated or said? It is granting a lien. In other words, all the things that you said why this can be done is solely because she did not guarantee the property or guarantee the judgment, but she signed the mortgage. If she had signed a guarantee, would she not be liable in the sense that if there was a default, then you could go against her? And after you went against her, then even though her name wasn't on the mortgage, would you then be able to foreclose it on the basis that you're liquidating both the guarantor and the guarantee's personal judgment deficiencies? If I may restate, just so I'm sure I have the hypothetical correct, under that Mr. Heikkinen would have signed the note. Mrs. Heikkinen would have signed a guarantee of the debt owed under the note. But only Mr. Heikkinen would have signed the mortgage. In that circumstance, when the property is held by tenancy in the entireties, my understanding is that you would not then be able to foreclose because Section 12-211 would potentially prevent that. Because the mortgage is the means by which the property is sold? Or the lien of the mortgage is affected? The issue would be that because she was not on the mortgage. So you're saying the mortgage signature is a sine qua non? It is required to foreclose on an individual's interest in the property, I believe. That's what I said, essentially, in a shorter way. But if I may, because I believe just to go back to the first step of defendant's analysis, which is that in order for there to be a lien on real property, all the parties granting that lien must also be obligated under the debt. And that simply isn't supported by the four cases they cite. Two of the cases, Elvin and Kruger, are actually dealing with the appropriate relationship between the opposite parties. So both Elvin and Kruger say, essentially, that the mortgage, the security instrument, is an incident of the promissory note, which means that the obligee, or the holder of the note, and the mortgagee have to be the same. But that's the opposite. Here, the crux of defendant's argument concerns the purported relationship between the obligor and the mortgagee. So right off the bat, Elvin and Kruger just are simply inapplicable. And then there's Devoyne and Adams. And these two cases are cited for the proposition that where there is no debt, there can be no lien. And that's correct in as far as it goes, but they don't go to whether the debt has to be owed by all of the people granting the lien. And, in fact, looking at the specific facts in each case reveals that it's just much more simply, in both cases, there just was not any debt at all. In Devoyne, it was an instance where the record, I believe, was even unclear to the Supreme Court when it was reviewing it. But what was crystal clear was that prior to the mortgagee attempting to execute a power of sale, the debt had been completely and totally extinguished. So under that circumstance, since the power of sale, foreclosure, is an alternative remedy to just collecting on the money judgment, there was no need for an alternative remedy because there was nothing to remedy. And on top of it, just as in under the modern IML, IMFL, a mortgagor has a right to redeem. Redemption back then was also a right, and redemption was simply not possible if there was no debt. Because if the power of sale was exercised and the property was sold, how could the mortgagor redeem the property? There was no underlying debt. It had already been extinguished. What did they pay? Oh, yes. Parill, I think, as – forgive me. I think it was Justice Park who made this point. But in Parill, the determinative issue was the fact that the mortgage was signed, and I quote, for the sole purpose of waiving homestead rights. Here, as defendants acknowledge, Mrs. Heikkinen signed as a borrower for the purpose of granting a lien on her property to secure Mr. Heikkinen's debt. And so it's just not on point at all, whereas, as Your Honors noted, this case is factually indistinguishable from SELAC. It's also, I believe, on – well, it's not on all fours, but it is also consistent with Marquette Bank and also consistent with the 17-011 South Park Avenue case. Both Marquette and that case are from the first district, and SELAC is obviously the third district. Certainly, also from looking at then both – sorry, moving on to the second part of the analysis, all of that is about the relationship between debt instruments and liens, but then also just focusing on Section 12-112. There's both a very simple reason, like legal reason, just textual, reading the statute itself, and also the purpose of the statute. The purpose is, as defendants note, to prevent one spouse from secretly – as in SELAC, then 112 doesn't apply because she's a borrower. Yes, exactly, exactly. If you don't mind, I'm going to shift gears a little bit. Yes. I'm going to shift gears to the notice issue, the 30-day notice issue. Yes, Your Honor. Let me ask you a question. If we were to follow this, the holding of this, and I'm going to pronounce this wrong, Ann Etiega case, would we not then, under that holding, have to remand this at least back for a hearing to determine if and when the 30-day notice was sent? No, Your Honor, because there's a very simple way of distinguishing the two cases. In this particular case – sorry, in Ann Etiega, the deemed allegations were deemed admitted because there was just a default, I believe, for it. So there was nothing whatsoever. Here in this case, if you look on page 221 of the record, which is where the amended – the answer to the amended complaint and affirmative offenses is found, defendants explicitly spell out all of the deemed allegations in 15-1504, including the deemed allegation that all notices of default or other notices required to be given have been duly and properly given. And they do not deny that. Under settled law, the failure to deny is equivalent to an admission. That's under 610, right? I believe 609, if – Well, if it doesn't have Etiega address that issue and say that this is an issue that doesn't fall into that category of, you know, the 1504 notices that aren't deemed admitted under 610, doesn't Etiega address that issue? Well, I don't believe that was the – this positive issue in Etiega, but to the extent that that is the case, then it's simply an issue of straight-up forfeiture of the issue by not raising it as an affirmative defense. Either it has to be raised as an affirmative defense, otherwise it would catch the plaintiff unawares, or it is considered a conditioned precedent to the suit, in which case that language encompasses it. And I don't believe there's any other option. Either it's a conditioned precedent, in which case the deemed allegation encompasses this sending of the grace of damages. Why haven't you alleged it if you don't have to prove it? Well, if you allege it and it is not denied, then that's a judicial admission, and that removes it from the issues that have to be proved in order to obtain judgment. I think I asked, who has the burden of proof to establish that the notices were sent? Oh, right. That's what I'm saying. It's either it's a conditioned precedent that where the burden is on the plaintiff and the plaintiff met that burden through the defendant's judicial admission, or if, as Justice Burke was suggesting, Adeyega turned on it not being a conditioned precedent and on being some form of affirmative defense, then the burden would fall on defendants. If it's a conditioned precedent, why would one have to defend against it through an affirmative claim? Why would it become an affirmative defense if it's not a conditioned precedent? Because it's either one or the other. I believe it's ‑‑ I'm not saying if it were a conditioned precedent, I'm not saying it would be an affirmative defense. I'm saying the opposite. It's either a conditioned precedent, in which case the burden falls on the plaintiff, or it's an affirmative defense, in which case the burden falls on the defendant. It's one or the other. So you're saying that a conditioned precedent doesn't have to be alleged? That is the purpose of the deemed allegations, to include things that would normally have to be alleged, but when you use a statutory form complaint, they're deemed included. Because if you look, for example, at the acceleration notice that is frequently required by the express terms of mortgages, that would normally be a conditioned precedent. Using the form complaint, foreclosure complaint in 15‑1504, those notices are deemed to ‑‑ those complaints are deemed to include the allegation that such notices are given. So your bottom line is it's implicit in using that form that you're alleging and accepting that we did all the notices, we don't have to specifically allege it, nor attach any affidavits, et cetera. And then it becomes the defendant's obligation to raise it as an affirmative defense. Hey, we didn't get one of those notices. Does the burden then shift back to you to respond to that and say, yes, we did, and here's my proof? If defendants had done that, then yes. But in this case, instead, they admitted that all notices were properly given. And you're saying that when they say that, that includes all notices that were not alleged. Correct. Because if you look at the deemed allegation, notices of acceleration are required by some mortgages and not others. Often they require certain information, certain content to be included. None of that detail is included in the deemed allegation. The deemed allegation is just general to include all notices that are required to be given. Which is what that Simpkins case says, but when we're talking about 1502.5. Correct. That is a separate statutory obligation upon anyone filing a mortgage foreclosure complaint to wait the 30 days, to give the notice and wait 30 days, and then you can file your lawsuit, correct? Correct. Okay. I mean, it may be right and it may be wrong, but the court went through the legislative history of that statute and said that the trial court's interpretation of the foreclosure law, which deemed the allegations admitted, the trial court did, all right, does not reflect the intent of the legislature and find that the language other notices required to be given in section 15.504 does not include the grace period notice under 15.015.2.5. Okay. So in that case, then the grace period notice, it's clear under 15-1504 that there's no requirement to allege, that there's no requirement on the plaintiff to allege that the grace period notice was sent. And if that's the case, then it's plainly not an element of a foreclosure action. No, no, no. The foreclosure law. The other notices under 1504. Yes. Does not include this notice. I understand this. Meaning that you have to put it in your complaint. I mean, the court goes on to say, the most recent enunciation of the legislature controls that there shall be no waiver of the requirement of a grace period notice prior to the filing of a suit under the foreclosure law. There should be no waiver of that under the deemed admitted provisions. If I may, and this is a mistake the defendants made in their reply as well, there's a difference between admitting that notice was properly served or properly given and waiver of the right to receive that notice. Here, we never argued that defendants waived the right to receive the notice. Our position was just that they judicially admitted the adjudicative fact that all notices were properly given. But is that the notices in 15-205 or 15-204? It's all notices. Our position is that the deemed allegations don't distinguish, and to the extent that Hara-Yuga, I guess, suggests otherwise, it's wrong on that point. And I would note that also the First District, in every case I'm aware of, to consider the issue of deemed allegations and judicial admission since Hara-Yuga has disagreed with it regarding the effect of failure to deny deemed allegations. Well, other than Simpson. Simpson didn't deal with 15-02.5, correct? Correct, but Bednarz did. And Bednarz addressed a specific constitutional challenge, a due process and a separation of powers challenge, to the deemed allegations that notices, including the grace period notice, were given. And in that case, it's 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-38. The court reiterated what it said in Simpson and repudiated Hara-Yuga to the extent that it's dealing with judicial admission of deemed allegations. And if I may, I believe, but I just wanted to correct one thing that my friend said regarding the first set of issues. He reiterated that they're challenging standing, not capacity. And because of that, I just want to point out that the burden is plainly on the defendants. And also, with respect to forfeiture of the tenancy in the entirety issue, my friend also suggested that it was raised in response to the motion for summary judgment. If you look at the record on pages 329 to 33, the tenancy by the entirety argument is not included in that response. It was included in, like, a post-judgment motion. In a motion to reconsider. So our position is that the issue is forfeited. Thank you. Thank you. Mr. Gordon. Thank you, Your Honors. Before I rebut, I would like to point out that I brought two cases that are out of jurisdiction cases. I've provided copies of those two cases to my friend in advance of the hearing. But I'm prepared to remit those to the court if you request. Neither of those two cases have been brought up on our arguments, but they are in the briefs, and therefore I brought copies of those two cases. Thank you. As far as our rebuttal is concerned, I would refer to page 17 of our reply brief because we addressed the issue about the deemed allegations. I want to make it perfectly clear we did not admit the deemed allegation that the notices were properly given. And that's on page 221 of the record. The deemed allegation is there shall be, I'm sorry. In response to the deemed allegation number 10, any and all periods of grace or other period of time allowed for the performance of the covenants or conditions claimed to have been breached or for the curing of any breaches have expired. The defendants responded by saying that plaintiff's allegations state to which an answer is either necessary nor appropriate. So we didn't admit that the notices were properly given, especially grace period notices were properly given. We indicated that at the point of filing our response to the deemed allegations that that had yet to be proved. And so the allegation that those notices had been provided is a legal conclusion, which is why we're here today to determine whether or not it was required by law or not. We did not admit the deemed allegation when we responded to either the initial complaint or the amended complaint. What significance does the notes of discovery or indiscovery relative to February 3rd receiving notice, what significance does that have? I don't know because there was nothing, it was in the plaintiff's, I believe it was in the plaintiff's motion for summary judgment in which they said, well, this cryptic note, which was not ascribed to anybody as far as who made the note, and even the cryptic note was inconclusive. It said something like February 3rd, I don't have, it says received letter February 3rd dash grace period notice. And I think it said yes, but we have no idea what that means. And the second point I'd like to make is that basically regarding the grace period notice, it's basically a two-prong test. Number one, was the notice given, period, which there was never any evidence introduced by affidavit or otherwise that the grace period notice was given and complies with the statute. But secondly, if a grace period notice was given, did that grace period notice comply with the statute? In other words, not only more than 30 days before the foreclosure was filed, but also the contents because the statute itself is very, very descriptive as to what the notice has to look like. So basically, without showing us a copy of what they may or may not claim that they said as far as the grace period notice, we have no way of determining whether the grace period notice was either timely or, in fact, complied with the statute for any other reason. Therefore, I still believe that the burden shifted to the plaintiff to say, yes, this is the copy of the notice. We have an affidavit from someone who has personal knowledge with the plaintiff that this was sent to the defendant. And despite the fact that the defendant filed an affidavit saying no such notice of that type was ever received by me, he's clearly lying because here's the notice that we know it was sent and it looks just like it does in the statute. The second point I'd like to – Before you move on, do you agree with the remedy that the First District put in Antioquia to remand it for a limited hearing on this notice issue? I do. I do. I don't believe that the trial court should have granted a summary judgment based on the fact that the parties were in dispute as to whether a notice was sent, regardless of the cryptic note of February 3rd, that the notice was sent, what was the format of the notice, and did the notice comply with the statute. And I believe that that is clearly a genuine issue of material fact, but the trial court apparently disagreed with me and decided that that wasn't a genuine issue of material fact. I have a question for you, too. You just said the burden then shifted back to the plaintiff. So is it your position that the plaintiff did not initially have to plead and prove compliance with the notices but did not shift back to them until some event happened? And you're suggesting that your answer, where you suggest all notices were complied with being a legal conclusion, that's what triggered the burden back? My answer would be that in the form complaint in the IMFL, there is no requirement that they specifically plead that that was given. So that's why I said shifted back, in fact. And what triggered it? What triggered it to shift back? Number one is our response to the deemed allegations, that it's a conclusion. Secondly, our affirmative defense, that we say that the notice was not given, and that being a condition perceived to the finding of the complaint is jurisdictional in nature, that can be raised at any time because it's jurisdictional in nature, the fact that the notice is a condition perceived. But you agreed it does not have to be initially pled? At the time. And I believe the courts have held that if a plaintiff uses the form provided by the IMFL, that we will not look beyond that to say you should have said this or you should have said that. Where you get in trouble is perhaps where you don't say something that wasn't in the prescribed form or you go farther than the form should have. At the time the complaint was filed, I don't believe it had to be pleaded in the complaint. It may now because of the cases and the changes in the law. But this complaint was initially filed, I believe, in 2010 sometime. And if I may, very quickly, I do want to rebut the conclusion brought by my friend as far as Alvin B. Kruger. That case clearly states that a mortgage is only incidental to underlying debt. Not that the mortgage and the debt are somewhat related and that you can sign a mortgage even if you don't have an obligation to the mortgagee. That case clearly says a mortgage is only incidental to debt.  It would seem comparable to the lack of efficacy of supplementary proceedings when there is no underlying judgment to be enforced. I would say so. And I think it would be much clearer if only Jennifer Heikkinen had signed a mortgage and had not signed a note, then it would be even considerate. But based on the fact that Scott Heikkinen did sign a note and sign a mortgage, now we're trying to consider whether or not the mortgage also applied to her interest in the property when she wasn't obligated to the plaintiff. Any other questions? Thank you. Court's adjourned. Thank you.